**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**MICHAEL BONANO,**

                                        **Plaintiff,**


                **v.**                                **9:08-CV-755**
                                                       **(FJS/TWD)**


**SCOTT C. CARLSEN, Superintendent**
**Ulster Correctional Facility,**

                                        **Defendant.**
_____

**APPEARANCES**                        **OF COUNSEL**

**MICHAEL BONANO**
**11-R-1271**
Marcy Correctional Facility
P.O. Box 3600
Marcy, New York 13403
Plaintiff *pro se*


**ATTORNEY GENERAL OF THE**            **KEITH A. MUSE, AAG**
**STATE OF NEW YORK**
The Capitol
Albany, New York 1224-0341
Attorneys for Defendant

**SCULLIN, Senior Judge**


**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

        Currently before the Court is Defendant Scott C. Carlsen's motion for summary judgment

pursuant to Rule 56 of the Federal Rules of Civil Procedure.  *See* Dkt. No. 99.

## II. BACKGROUND

**A.    Introduction**

On July 7, 2008, Plaintiff Michael Bonano[1] commenced this action *pro se* pursuant to 28 U.S.C. § 1983, alleging various constitutional violations against several Defendants. *See* Dkt. No. 1. Plaintiff's claims stem from his incarceration at Ulster Correctional Facility ("Ulster") from November 21, 2007, to December 17, 2007. *See id.* The Court issued previous orders dismissing several of Plaintiff's claims and individual Defendants from this action. *See* Dkt. Nos. 20, 26, 61. Only the first and sixth causes of action survived the Court's orders. *See id.* In these causes of action, which are essentially the same, Plaintiff alleges that Defendant Carlsen, the former Superintendent of Ulster, implemented or maintained policies that violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment. *See* Dkt. No. 1 at 19-21.[2]

**B.    Ulster's water supply**

Ulster and Eastern Correctional Facility ("Eastern") share a common water source that provides water exclusively for the inmates and employees at both facilities. *See* Dkt. No. 99-2 at ¶ 6; Dkt. No. 99 at ¶ 4. The water source (*i.e.*, two drilled wells approximately 200 feet deep) are located on DOCCS' property between Ulster and Eastern. *See* Dkt. No. 99-3 at ¶ 7. From the wells, the water travels to a water treatment plant for disinfecting and softening and then is stored in a 1.5 million gallon tank. *See id.* at ¶¶ 8-9.

---

[1] "Michael Bonano" is Plaintiff's legal name, and "Anthony Cusamano" is a false name that he provided to the arresting police officers. At the final pretrial conference on April 24, 2013, the Court ordered the caption in this case to reflect Plaintiff's legal name.

[2] To avoid confusion, the Court's citations to specific page numbers reference the page numbers that the Court's electronic filing system automatically generates.

To ensure a safe water supply, DOCCS employees allegedly test the water daily and monthly. *See id.* at ¶ 10; Dkt. No. 99 at ¶ 6. DOCCS sends the monthly water samples collected from various parts of Ulster to Environmental Labwork, Inc., an independent laboratory, for bacteriological examinations. *See* Dkt. No. 99-3 at ¶ 11; Dkt. No. 99-4 at ¶ 8. The pertinent bacteriological examinations that Environmental Labwork performed span from October 9, 2007, to January 8, 2008. ("Environmental Labworks reports"). *See* Dkt. No. 99-1 at ¶ 16-20. Chris Jaeger, a seasoned water systems manager at Environmental Consultants, LLC and a certified New York State Department of Health water systems operator, supervises the collection of water samples taken from different locations at Ulster and Eastern. *See* Dkt. No. 99-3 at ¶¶ 3, 11. Jaeger also analyzes the monthly test results to prepare his Annual Drinking Water Report for Ulster and Eastern, which the respective inmates may review. *See id.* at ¶¶ 5, 11.

## C.    Plaintiff's incarceration at Ulster

In 2004, Plaintiff received a sentence of three and one-half to seven years for burglary in the third degree and robbery in the third degree. *See* Dkt. No. 99-5 at 3. Plaintiff was paroled after serving a portion of that sentence; however, he returned to prison, namely Ulster, on November 21, 2007, for violating his parole. *See id.* Ulster housed Plaintiff for approximately one month until his transfer to Queensboro Correctional Facility ("Queensboro") on December 17, 2007. *See id.*; *see also* Dkt. No. 99-4 at ¶ 1.

While incarcerated at Ulster, Plaintiff alleges that, "on several occasions," the water in the showers and bathroom sinks was "visibly brown." *See* Dkt. No. 1 at ¶¶ 8- 10. Plaintiff claims that the allegedly brown water, among other things, caused him diarrhea "at least a few days out of the week," discolored his white underclothes, which he wore in the shower, and

caused him skin and scalp issues. *See id.* at ¶¶ 8-10, 40. Plaintiff filed grievances complaining about the brown water. *See id.* at ¶ 20.

On December 25, 2007, nearly two weeks after Plaintiff arrived at Queensboro, Plaintiff wrote a letter to Defendant Carlsen, attaching copies of his grievances. *See id.* at ¶ 48. Defendant Carlsen replied on December 31, 2007, informing Plaintiff that he did not respond to petition grievances and that he considered canceling Plaintiff's transfer. *See id.* at ¶ 50; Dkt. No. 43-3 at 8. He also received a response from Duane Taylor, Ulster's Grievance Director, which allegedly stated, among other things, that "'[t]he water is tested regularly by town officials and deemed safe.'" *See* Dkt. No. 1 at ¶ 52.

**D.      Defendant Carlsen's first motion for summary judgment**

On April 18, 2011, Defendant Carlsen brought a motion for summary judgment. *See* Dkt. No. 43; Dkt. No. 43-7. The Court referred his motion to Magistrate Judge Lowe. In a Report-Recommendation and Order dated December 16, 2011, Magistrate Judge Lowe found questions of fact regarding (1) whether Ulster subjected Plaintiff and other inmates to brown, polluted water and (2) whether Defendant Carlsen had knowledge of and disregarded a serious risk to inmate safety. *See* Dkt. No. 55 at 14-16. Magistrate Judge Lowe specifically determined that

> Defendant submitted some documents from Environmental Labworks, Inc., and the County of Ulster Department of Health, in support of his position that "there were no problems with the water between November and December 2007. . . . However, these records are not authenticated and Defendant has provided no explanation of the records, e.g., who conducted the tests, the methods used, how to interpret the results, or how complete the records are. Additionally, as Plaintiff points out in his response, the documents provided by Defendant at most suggest that there was not bacteria in the water. . . . Defendant has not disputed the color of the water and has not provided an explanation for it. It is

> entirely unclear what role, if any, Defendant Carlsen played with
> respect to the water at Ulster. Given the insufficient records
> submitted by Defendant, and drawing all reasonable inferences in
> Plaintiff's favor, there is a triable issue of fact as to whether the
> brown water at Ulster was objectively a sufficiently serious
> condition as to rise to the level of a constitutional violation.

*See id.* at 14-15 (internal citations and footnote omitted).[3]  On March 27, 2012, the Court adopted

Magistrate Judge Lowe's recommendation.  *See* Dkt. No. 61 at 5.  As such, the issue remaining

for trial is whether Defendant Carlsen subjected Plaintiff to unconstitutional conditions of

confinement from November 21, 2007, to December 17, 2007, because of the alleged brown

water.  *See id.*

On April 24, 2013, the Court held a final pretrial conference, which Plaintiff attended via

teleconference.  *See* Dkt. No. 99-5 at 3.  Since Plaintiff needed more time to secure his witnesses,

the Court reset the trial date for August 20, 2013.[4]  In the meantime, the Court granted Defendant

Carlsen leave to file a renewed motion for summary judgment to address Plaintiff's alleged

exposure to brown water and the risk, if any, said water posed to his health.  *See* Minute Entry

dated April 24, 2013.

---

[3] Magistrate Judge Lowe, however, recommended that the Court dismiss the other
components of Plaintiff's first and sixth causes of action, namely Defendants' failure to remedy
the abnormally cold housing unit temperatures, Defendants' failure to provide him basic items,
and Defendants' deliberate indifference to his medical needs.  *See* Dkt. No. 1 at ¶¶ 19-21; Dkt.
No. 55 at 25.

[4] Subsequently, due to a conflict in the Court's calendar, the Court reset the trial date to
September 23, 2013.  *See* Text Notice dated July 12, 2013.

### III. DISCUSSION

**A.    Standard of review**

Under Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  If the movant meets its burden, the non-moving party must set forth "'specific facts showing that there is a genuine issue for trial.'"  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quotation and footnote omitted).  In determining whether a genuine issue of material fact exists, "the court must construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in the non-moving party's favor."  *Consol. Risk Servs., Inc. v. Auto. Dealers WC Self Ins. Trust*, No. 1:06-CV-871, 2010 U.S. Dist. LEXIS 68401, *10 (N.D.N.Y. July 9, 2010) (citation omitted).

A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.  A dispute of fact is "material" if it "might affect the outcome of the suit under the governing law[;]" therefore, "[f]actual disputes that are irrelevant or unnecessary will not be counted."  *Id.* (citation omitted).  Thus, as the Supreme Court has explained, "[the non-moving party] must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citations omitted); *see also Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) (explaining that "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact" (citation omitted)).

In reviewing "a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'" *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2003) (quotation and other citations omitted)). "Indeed, the Second Circuit has stated that 'implicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training.'" *Id*. (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). "This liberal standard, however, does not excuse a *pro se* litigant from following the procedural formalities of summary judgment." *Id*. (citation omitted). To that end, "'a *pro se* party's "bald assertion," completely unsupported by evidence,' is not sufficient to overcome a motion for summary judgment." *Youngblood v. Johnson*, No. 9:10-cv-00752, 2013 U.S. Dist. LEXIS 85938, *6-*7 (N.D.N.Y. June 19, 2013) (quotation omitted).

**B.     Conditions-of-confinement claim**

The Eighth Amendment to the United States Constitution protects prisoners from "cruel and unusual punishment." U.S. Const. Amend. VIII. "Although the Constitution does not require 'comfortable' prison conditions, the conditions of confinement may not 'involve the wanton and unnecessary infliction of pain.'" *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347, 349, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981)); *see also Blyden v. Mancusi*, 186 F.3d 252, 263 (2d Cir. 1999) (stating that, "[b]ecause society does not expect or intend prison conditions to be comfortable, only extreme deprivations are sufficient to sustain a 'conditions-of-confinement' claim" (citation omitted)).

The constitutional prohibition against cruel and unusual punishment includes the right to be free from conditions of confinement that impose an excessive risk to an inmate's health or

safety. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "To state an Eighth Amendment claim based on conditions of confinement, an inmate must allege that: (1) objectively, the deprivation the inmate suffered was 'sufficiently serious that he was denied the minimal civilized measure of life's necessities,' and (2) subjectively, the defendant official acted with 'a sufficiently culpable state of mind . . . , such as deliberate indifference to inmate health or safety.'" *Walker*, 717 F.3d at 125 (quoting *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001)).

Under the objective element, a plaintiff "must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." *Id.* (citations omitted). "Thus, prison officials violate the Constitution when they deprive an inmate of his 'basic human needs' such as food, clothing, medical care, and safe and sanitary living conditions." *Id.* (quotation omitted); *see also Bellezza v. Fischer*, No. 05 CIV. 98, 2006 U.S. Dist. LEXIS 76962, *10 (S.D.N.Y. Oct. 24, 2006) (stating that "[w]ater that is suitable for drinking and bathing is undeniably one of 'life's necessities,' and, as defendant concedes, the Eighth Amendment therefore requires that it be supplied to inmates" (citation omitted)). "'[T]here is no static test to determine whether a deprivation is sufficiently serious; the conditions themselves must be evaluated in light of contemporary standards of decency.'" *Walker*, 717 F.3d at 125 (quoting *Jabbar v. Fischer*, 683 F.3d 54, 57 (2d Cir. 2012)).

As for the subjective requirement, "a prison official must have a 'sufficiently culpable state of mind.'" *Farmer*, 511 U.S. at 834 (quotation and other citations omitted). In cases involving conditions-of-confinement, the state of mind is one of "deliberate indifference." *Id.* (quotation omitted). "[D]eliberate indifference requires 'more than mere negligence[,]'" *Jabbar*, 683 F.3d 57 (quotation omitted), but less than conduct undertaken for the very purpose of causing harm, *see Farmer*, 511 U.S. at 835. For a prison official to act with deliberate

8

indifference, he "'must know of, and disregard, an excessive risk to an inmate's health or safety.'" *Walker*, 717 F.3d at 125 (quoting *Jabbar*, 683 F.3d at 57). "Evidence that a risk was 'obvious or otherwise must have been known to a defendant' may be sufficient for a fact finder to conclude that the defendant was actually aware of the risk." *Id.* (quoting *Brock v. Wright*, 315 F.3d 158, 164 (2d Cir. 2003)).

For the reasons set forth below, the Court concludes that Plaintiff has failed to raise a triable issue of fact as to whether Defendant Carlsen exposed him to brown, polluted water in violation of the Eighth Amendment.

### 1. Objective element

Despite Plaintiff's general statements, he has come forward with no evidence to support his assertion that Ulster's water, objectively, posed an unreasonable risk of serious damage to his health. Even drawing all reasonable inferences in Plaintiff's favor, he has not and cannot identify a causal link between Ulster's water and his intermittent diarrhea. *See Perez v. Hawk*, 302 F. Supp. 2d 9, 22 (E.D.N.Y. 2004) (granting motion to dismiss where the plaintiff-inmate "fail[ed] to allege a clearly stated causal link" between the alleged contaminated water and his symptoms). Tellingly, Plaintiff has not offered any expert medical opinion that his diarrhea resulted from Ulster's water; and the record is void of any such opinions from Ulster's and/or Queensboro's medical personnel. *See Hamilton v. Smith*, No. 06-CV-805, 2009 U.S. Dist. LEXIS 91032, *48-*49 (N.D.N.Y. Jan. 13, 2009) (granting summary judgment for the defendant because, in part, the plaintiff "offered no proof of any neurological conditions he ha[d] suffered as a result of the [allegedly contaminated] water"). In fact, Plaintiff stated at his deposition that he was unsure of whether he saw medical staff at Ulster regarding his alleged diarrhea. *See* Dkt. No. 99-1 at 11.

9

Plaintiff also admitted that he made the connection between his diarrhea and Ulster's water, as "he [had] to assume the source [of his diarrhea] was something and [he did not] think it was the food . . ." *See id.* at 11-13; *see e.g.*, *Bellezza*, 2006 U.S. Dist. LEXIS 76962, at *11 n.2 (noting that the plaintiff's "suggestion that the water caused him to suffer headaches, loose bowel movements, stained teeth, and liver or kidney damage [was] entirely speculative"). Moreover, Plaintiff testified that he did not swallow the water when he brushed his teeth and did not drink water from the bathroom sink. *See id.* at 11. Rather, Plaintiff stated that he drank water from a drinking fountain, which he has not alleged was brown or contaminated. *See id.*

Accordingly, the Court finds that Plaintiff's conclusory allegations are deficient inasmuch as Plaintiff fails to adduce evidence showing that Ulster's water posed an unreasonable risk of serious damage to his health. *See Mandrall v. Smith*, No. 9:07-CV-413, 2009 U.S. Dist. LEXIS 85959, *16 (N.D.N.Y. Aug. 28, 2009) (finding that the record lacked evidence "to suggest, that the water at [his prison] was contaminated or otherwise insalubrious"); *see DeLeon v. Wright*, No. 10-CV-863, 2012 U.S. Dist. LEXIS 111977, *24 (N.D.N.Y. July 5, 2012) (granting summary judgment for the defendants where the plaintiff "failed to demonstrate that the water source was objectively unsafe"), *report and recommendation adopted by* 2012 U.S. Dist. LEXIS 111948 (N.D.N.Y. Aug. 9, 2012)).

### 2. Subjective element

As with the objective element, Plaintiff has failed to raise a genuine issue of fact as to whether Defendant Carlsen acted with deliberate indifference by knowing of, and disregarding, the alleged serious risk that Ulster's water posed to his health. According to the undisputed evidence, Ulster's water originates from two drilled wells, is pumped to a water treatment plant

where it is softened and disinfected, and is then stored before distribution to the facility.  *See* Dkt. No. 99-3 at ¶¶ 7-9; *see also Hamilton*, 2009 U.S. Dist. LEXIS 91032, at *48-*49 (granting summary judgment for defendants, in part, because "defendants' water treatment nullified and eradicated potential toxins").  DOCCS employees thereafter test water samples from Ulster and Eastern on a daily basis.  *See* Dkt. No. 99-3 at ¶ 10.  Environmental Labworks also performs additional testing on water samples taken monthly.  *See id.* at ¶ 11.  The fact that Ulster's water is softened, disinfected, and tested regularly severely weakens Plaintiff's speculative allegation that, subjectively, Defendant Carlsen acted with deliberate indifference to his health.  *See DeLeon*, 2012 U.S. Dist. LEXIS 111948, at *7 (holding that "[the p]laintiff's conclusory assertion that the water was harmful has been thoroughly refuted by, among other things, the affidavits of DOCCS' plant manager, test results from employees of the facility, and an independent laboratory analysis of the water" (citations omitted)).  In addition, Defendant Carlsen delegates the daily management of Ulster's water to his staff and outside contractors; and, since no one advised him that the water posed a substantial risk of serious harm to Ulster's inmates and employees during the time in question, he had no reason to suspect that the water was unsafe.  *See* Dkt. No. 99-2 at ¶¶ 5, 13-16.

### 3.  *Additional new evidence*

Notably, Defendant Carlsen has presented the Court with new evidence that it did not have before it when deciding his first motion for summary judgment.  First, Defendant Carlsen has submitted, for the first time, Jaeger's declaration in support of the instant motion for summary judgment.  *See* Dkt. No. 99-3.  As previously recounted, Jaeger works for Environmental Consultants, LLC as a water systems manager and is the operator of record for

Ulster's water supply. *See id.* at ¶ 4. In that capacity, Jaeger's responsibilities include supervising the DOCCS employees' collection of water samples, tracking water quality tests, and analyzing those test results. *See id.* at ¶¶ 4, 13. Jaeger also reviews and analyzes Environmental Labwork's reports pertaining to the test results from water samples taken at Ulster and Eastern in preparing his Annual Drinking Water Report. *See id.* at ¶¶ 5, 11. According to Jaeger, during Plaintiff's incarceration between November 21, 2007, and December 17, 2007, (1) "the water supplied to [Ulster] had no violations of State regulatory limits for contaminants"; (2) "the water system was compliant with all applicable state requirements"; (3) "the water supply provided safe potable water for the inmates housed at [Ulster] for both drinking and bathing"; and (4), "[a]lthough water testing showed that contaminants existed in the water supply, the contaminants were detected below the level allowed by State regulations." *See id.* at ¶¶ 13-16; *see also Mandrall*, 2009 U.S. Dist. LEXIS 85959, at *16 (citing the prison superintendent's affirmation that "'the water at [the prison] was routinely tested during the period that the plaintiff was there, and no pathogens were ever found in the water'"); *Wright v. New York State Dep't of Corr. Servs.*, 06 Civ. 03400, 2008 U.S. Dist. LEXIS 106507, *31 (S.D.N.Y. Oct. 10, 2008) (concluding that water tests showed that prison officials took reasonable measures to safeguard the prison's drinking water and the plaintiff-inmate submitted no evidence that anyone at the prison "'knew of . . . yet refused to remedy' the risk of H. pylori or Giardia in the drinking water" (citation omitted)).

Second, Defendant Carlsen has cured a deficiency with the admissibility of the Environmental Labwork reports that Magistrate Judge Lowe underscored in ruling on Defendant Carlsen's first motion for summary judgment. *See* Dkt. No. 55 at 14-15. Specifically, Magistrate Judge Lowe stated that, "[i]f Defendant had submitted complete and properly authenticated

documentation of efforts to ensure safe water at Ulster, the Court could have considered that as evidence that Defendant did not disregard inmate safety.  However, . . . that is not the case." *See id.* at 16 n.20.  Thus, Magistrate Judge Lowe recommended that the Court dismiss the Environment Labworks reports as inadmissible hearsay evidence.  *See id.* at 15 n.19.

It is elementary that admissible evidence must support a motion for summary judgment. *See Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008). Hearsay evidence is not admissible unless it falls within an exception to the hearsay rule.  *See* Fed. R. Evid. 802.  Pertinent here, the business-record exception to the hearsay rule renders admissible records of "act[s], event[s], condition[s], opinion[s], or diagnos[es] . . . made at or near the time by – or from information transmitted by – someone with knowledge" only where such records are "kept in the course of a regularly conducted activity of a business . . . [and] making the record was regular practice of that activity[.]"  Fed. R. Evid. 803(6).  In addition, "[t]he original or a copy of a domestic record that meets the requirements of Rule 803(6)(A)-(C), as shown by a certification of the custodian or another qualified person that complies with a federal statute or a rule prescribed by the Supreme Court[]" are self-authenticating and require no extrinsic evidence of authenticity.  Fed. R. Evid. 902(11).

With respect to the instant motion, Defendant Carlsen has submitted authenticated reports from Environment Labworks that qualify under the business-record exception to the hearsay rule.  *See* Dkt. No. 99-1 at 16-20.  Anthony Falco from Environmental Labworks, Inc. certified the reports on June 26, 2013, affirming that they were

> a true and correct copy of documents maintained by Environmental Labworks, Inc. . . . That said documents were made in the regular course of business and that it was the regular course of such business to make such documents at the time of the transactions, occurrences, or events recorded therein or within a reasonable time thereafter.

*See id.* at 16.  Thus, unlike the first motion for summary judgment, the Court may consider the Environmental Labworks reports in deciding Defendant Carlsen's pending motion because an Environmental Labworks employee certified these reports.

Accordingly, the Court grants Defendant's motion for summary judgment and dismisses Plaintiff's remaining Eighth Amendment conditions of confinement claims.


**C.    Qualified immunity**

Qualified immunity generally protects governmental officials "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations and footnote omitted).  Of course, "[e]ven when a plaintiff's federal rights are so clearly defined that a reasonable public official would know that his actions might violate those rights, qualified . . . immunity might still be available as a bar to a plaintiff's suit if it was objectively reasonable for the public official to believe that his acts did not violate those rights." *Kaminsky v. Rosenblum*, 929 F.2d 922, 925 (2d Cir. 1991) (citation omitted).

Even if an issue of fact existed as to whether Defendant Carlsen violated Plaintiff's Eighth Amendment rights, qualified immunity would shield him from liability because it was objectively reasonable for him to believe that any action he took, or failed to take, did not violate Plaintiff's Eighth Amendment rights.  *See* Dkt. No. 99-5 at 11.  There is no doubt that inmates enjoy a clearly established right to have suitable drinking and bathing water.  *See Bellezza*, 2006 U.S. Dist. LEXIS 76962, at *10.  Nevertheless, Defendant Carlsen reasonably relied upon his staff to ensure that the water supply at Ulster was safe; and he lacked personal knowledge of any violations of Plaintiff's constitutional rights.  *See* Dkt. No. 99-2 at ¶¶ 5, 13-15.  Thus, without

knowledge that Ulster's water supply posed a risk to the inmates and employees' health, it was objectively reasonable for Defendant Carlsen to believe that his inaction in remedying the water situation about which Plaintiff complains was lawful.

Accordingly, in the alternative, the Court grants Defendant Carlsen's motion for summary judgment on the ground of qualified immunity.


## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant Carlsen's motion for summary judgment is **GRANTED** in its entirety; and the Court further

**ORDERS** that Plaintiff's letter motion requesting two additional witnesses, subpoenas, and a three-week adjournment of the trial date is **DENIED** as moot; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Defendants and close this case.

**IT IS SO ORDERED.**

Dated: September 3, 2013
      Syracuse, New York


Frederick J. Scullin, Jr.
Senior United States District Court Judge